WILLIAM H. AMELINE, Plaintiff and Respondent, v.
PACK AND COMPANY, Inc., a Corporation, Defendant
and Appellant.

No. 11981.
Submitted May 10, 1971.
Decided May 26, 1971.
485 P.2d 689.

Murphy, Robinson, Heckathorn & Phillips, I. James Heca-thorn, argued, Kalispell, for defendant and appellant.

John M. McCarvel, argued, Great Falls, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment after a motion for a new trial was denied. Plaintiff William H. Ameline brought the action to recover money due under an alleged one year contract of employment. The District Court of the Eleventh Judicial District, Flathead County, sitting without a jury, entered judgment for the plaintiff, finding due the sum of $3,908.65 with interest, court costs, and $530 attorney fees.

Plaintiff filed his complaint alleging that he had been employed by defendant Pack and Company, a corporation, for a term of one year at an annual salary of $9,600. Plaintiff further alleged that: he worked continuously until he was terminated; he was paid $5,691.35; he was entitled to the balance of one year's salary plus paid vacation; and, damages for additional expenses of moving and wrongful termination of his employment.

An answer was filed consisting of a single defense that all payments due had been paid and denied the complaint as to the allegations of a year's contract. As noted above, the judgment found damages for the balance of wages or salary due but did not find for a paid vacation or for moving expenses. No cross-appeal was filed.

Plaintiff was an experienced paver-operator. He lived with his family in Great Falls where he worked for various contractors, but mostly on a seasonal basis, the business being of that nature.

One Bill Radovich of Great Falls was contacted by defendant and hired on an annual basis by defendant, but before he could start work he broke his leg and could not report. Radovich rec-

ommended plaintiff to defendant as a qualified operator. Rado-vich contacted plaintiff and advised him to accept year around employment rather than continue seasonal employment.

Plaintiff went to Kalispell, met with defendant and entered into an agreement. The agreement, according to plaintiff's testimony, was for a two week trial period after which time, if both parties were satisfied, it would be binding on both.

Defendant was a corporation engaged in excavation and utility business and asphalt paving. Defendant entered the asphalt paving business in the spring of 1968. Equipment was purchased and personnel sought to operate the equipment. Plaintiff was hired. The trial court found that on May 11, 1968 plaintiff and defendant entered into a contract whereby defendant agreed to employ plaintiff for a period of one year, payment to be made in monthly payments of $800.

Plaintiff moved from Great Falls to Kalispell and began work on May 13, 1968. He was terminated without notice on December 2, 1968. Defendant's superintendent, Merrill Bates, handed him a termination slip, told him that defendant did not have any more work, was running out of money, and could not carry a crew through the winter. The first big snowfall of the year occurred that day and the weather stopped all asphalt work.

Plaintiff's position was that the employment was a contract for a year; defendant's was that it was from month to month or general and indefinite and plaintiff was discharged for cause.

The issue on this appeal is whether the trial court erred in finding a year's contract.

Defendant, appellant herein, contends the evidence supports the proposition that plaintiff's employment contract was a hiring by the month, for an indefinite period; and does not support the proposition that it was a contract for one year. Also, defendant insists the evidence demonstrates that plaintiff was discharged for cause; and thus under section 41-305, R.C.M.1947, discharge for cause would make the term of hiring irrelevant.

The district court found that there was a year's contract but

made no finding as to whether the plaintiff's discharge was for cause. At the pleading stage, the defendant did not allege discharge for cause, but rather, just answered by a general denial. As noted heretofore, Bates, the superintendent, did not, in terminating plaintiff, give any indication of good cause for the discharge. The timing of the lay off—the first big snowfall, the fact that two other employees were terminated the same day, the silence as to reason other than that expressed, all tend to disprove good cause. But, we shall come back to this later.

The trial court found a year's contract. If there is substantial, credible evidence to support the trial court's findings, the findings will not be set aside on appeal. Firestone v. Bradshaw, 157 Mont. 181, 483 P.2d 716.

Bates, defendant's superintendent, testified that Ronald Pack, president of defendant corporation, told him plaintiff had been hired on an annual basis. Bates also testified that around Labor Day, Pack had Bates go to plaintiff and propose that the basis of his employment be changed from an annual basis to an hourly one. Plaintiff refused. Bates also testified that another employee did change to an hourly rate. He further testified that he, Bates, was on a $12,000 per year "guaranteed" salary. Yet, Bates went on to say that he could "quit" by giving two weeks' notice. There was conflicting testimony and versions of what a year's contract meant.

Appellant points out that even the plaintiff admitted that he was not contractually bound for a year. On cross-examination the following exchange occurred:

"Q. You felt, did you not, that—on all the jobs that you have worked, you felt that you have had a right to quit the job at any time you wanted to? A. Yes.

"Q. And there was nothing different about this job with Mr. Pack, you felt that after a month or two months or at any point in time you felt that you had the right to quit this job also, didn't you, if things weren't going the way you wanted them? A. Well, I'll tell you, I was going by the guaranteed

salary and I had my children in school and I figured that I had planned on staying with Mr. Pack. I never had no intention of leaving him. I would have probably been here today yet.

"Q. But the point that I am making is even though you may have intended to stay and wanted to stay, you felt that you had the right to leave, did you not? A. It didn't enter my mind.

"Q. Well then, you didn't think conversely then you didn't feel that you were bound to stay either? A. Well no. I really didn't think anything about quitting or leaving, but I suppose if I had it in mind, I would have, I would have talked it over. I think I would have talked it over with Ronnie. I think if I had any reason to want to leave, I think I would have went to him and talked with him and talked it over.

"Q. But the point that I'm making is that during this time you knew that you could leave if you wanted to? A. Well, I guess so."

However, plaintiff continued to insist that he had a "guaranteed" year's contract. He did admit that it depended upon his ability to do the job. Bates, the superintendent, testified that plaintiff did the job.

All of this discussion of the testimony adds up to the fact that, although the evidence was conflicting, there was substantial credible evidence to find as the trial court did.

█ We return now to the discharge. Defendant introduced evidence of drinking, hangovers, and other matters in an effort to establish cause for the discharge. Appellant cites section 41-305, R.C.M.1947, which provides:

"*Termination by employer for fault.* An employment, even for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it."

Section 41-307, R.C.M.1947, provides:

*"Compensation of employee dismissed for cause.* An employee, dismissed by his employer for good cause, is not entitled to any compensation for services rendered since the last day upon which a payment became due to him under the contract."

Evidence was offered to establish the cause for the discharge under the statute. However, there was conflicting evidence. Bates, as pointed out heretofore, testified to the good work of plaintiff. He also testified that Pack instructed him to give reasons for the discharge—the reasons being contrary to the provisions of the statute. Now, Pack would have this Court believe that this was not so; that, in fact plaintiff was guilty of willful misconduct. Again, there was conflicting evidence, and the trier of fact chose to believe one version.

We have commented that the trial court did not make a specific finding the discharge was not for cause. The finding, if necessary, would be implied. However, here, this was not made an issue except as an afterthought. No exceptions were taken to the findings, but we do not ground this opinion on that. The defendant had the burden of proof to establish the cause for discharge, if any there was, and simply failed to do so.

Finding that the evidence supports the trial court's findings, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, HASWELL, and JOHN C. HARRISON, concur.